Maurice Levy, Jr., and Shirley H. Levy v. Commissioner.
Levy v. Commissioner
Docket No. 78450.
United States Tax Court
T.C. Memo 1961-296; 1961 Tax Ct. Memo LEXIS 51; 20 T.C.M. (CCH) 1534; T.C.M. (RIA) 61296; October 27, 1961
Maurice Levy, Jr., 462 N. Highland Ave., Los Angeles, Calif., for the petitioners. William J. Kass, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined deficiencies in income tax against the petitioners for the taxable years 1955, 1956 and 1957 in the respective amounts of $978.26, $802.10 and $982.30. The only question for decision is whether petitioners, both of whom were engaged in gainful occupations, are entitled to deduct as medical expense the wages paid a nursemaid to care for their two minor children. Findings of Fact Some of the facts have been stipulated *52 and are found as stipulated. Petitioners are husband and wife and are residents of Los Angeles, California. They filed joint income tax returns for the years involved with the district director of internal revenue for the sixth district of California. The returns were prepared on a cash basis of accounting and by calendar years. Petitioner Maurice Levy, Jr., has practiced law in Los Angeles for more than twenty-five years, including the taxable years herein. He usually works five and one-half days a week. On some occasions, he has worked during evenings. He realized income from his law practice in the amount of $19,529.18 in 1955, $20,016.45 in 1956 and $21,082.66 in 1957. Over the period extending from March 1950 through the taxable years, petitioner Shirley H. Levy was a partner in a children's wear manufacturing business in Los Angeles, operated under the name of Ann Marilyn of California. She designed and sold blouses for girls five days a week, and was usually at home on Saturdays and Sundays. During the taxable years she realized income from her business in the amount of $21,052.11 in 1955, $16,807.02 in 1956 and $20,748.08 in 1957. Petitioners are the parents of two *53 daughters, Karen Jane, who was born March 12, 1950, and Susan Beth, who was born February 4, 1952. Petitioners have retained the services of Edward G. Mack, a pediatrician and physician, for their daughters since the children's birth. During the taxable years petitioners employed Bessie Roe as nursemaid for their two daughters. Bessie's employment began not later than the birth of Susan, but may have started at or shortly after the birth of Karen. Her name was obtained from a list of practical nurses kept in Mack's office by the office nurse. The doctor was not acquainted with Bessie, and knew nothing of her qualifications at the time she was employed by the petitioners. Bessie lived at the home of petitioners and was subject to call at all times when she was not off duty. She was usually off duty during the week-ends. Her duties consisted of preparing breakfast and lunch for the children and feeding them; supervising their daily activities, including play and rest, except during the periods they were in school or she was off duty; administering treatments when they were well, and otherwise looking after their needs and caring for them. She also did some washing of their clothes. *54 When Bessie was off duty, the children were carred for by their mother or the housemaid, the latter also being employed on a full-time basis. The housemaid did the general housework, the laundry that was not sent out or done by Bessie, and prepared all meals except those prepared by Bessie for the children. Petitioners and their children usually ate the evening meals together, but when they did not, Bessie prepared those meals for the children. Karen and Susan have resided with their parents since birth, and the girls have shared the same bedroom. When each of the girls reached five years of age, she entered public school kindergarten and after kindergarten attended the public grade school. Karen's health was normal. Susan, during her early years, experienced upper respiratory infections. "Respiratory infections" include colds and infections of the eyes, ears, nose, throat and chest. She was also underweight. On some undisclosed date, purportedly in the latter part of 1954, and in the course of a conversation with Mack, which included a discussion of Susan's physical condition, petitioners brought up the subject of dispensing with Bessie's services. There had been trouble from *55 time to time between Bessie and the housemaid. Mack expressed the view that it would be wise to retain Bessie's services, if possible. During 1955 Susan had tonsillitis and bronchitis and some eye infections, for which Mack prescribed antibiotics. Blood counts indicated that she was anemic. She was put on an iron tonic to remedy that condition. Upon the advice of Mack, her tonsils and adenoids were removed. This was done in 1955 at a hospital. During 1956 Susan had post-nasal discharges, which in one instance continued for a considerable length of time and for which she was given antibiotics and cough syrups. A "detail man" recommended to the doctor a new drug called Actofort that had been brought on the market as being good for children who were underweight. Mack had a three-month supply sent to petitioners' home, directing that it be given to Susan. In 1957, Susan had a cough for a month caused by a post-nasal discharge and for which the doctor ordered antibiotic nose drops. At one time during the year she had a stuffy nose and sore throat, for which she was given some antibiotic nose drops. She also had chicken pox during the year. Susan's height and weight at 1, 2, 3, 4 *56 and 6 years of age, and the average height and weight of a girl at those ages, [1] as prepared at the University of Iowa, were as follows: Actual weight
Actual height
Average weight
Average height
Age
in pounds
in inches
in pounds
in inches
Year
1
18
30
21
29
1953
2
21 1/2
33 1/2
27
34 1/2
1954
3
25 1/2
35 3/4
32
37 1/2
1955
4
32
39 1/2
37
40 1/2
1956
6
38 1/4
44 1/4
45
45 1/2
1958
During the period of Susan's illnesses or ailments Bessie administered tonics, other medicines, vitamins and food supplements in accordance with Mack's instructions. On occasions, Bessie prepared and used a vaporizer in the treatment of Susan for nasal discharges that followed colds. In 1957, when Susan started to kindergarten, she and her sister attended the same school and were taken there by their father. Susan attended kindergarten until noon, during which period she was not under a nurse's care. When she attended grade school, her father arranged for her to have milk and rest in the afternoons. During the taxable years 1955, 1956 and 1957, *57 petitioners paid Bessie a salary in the respective amounts of $2,040, $2,090 and $2,090. On their returns, they claimed deductions for the amounts so paid as medical expense. Respondent disallowed the deductions claimed. Of each of the aforesaid amounts, $150 represented payment to Bessie for her services in the treatment of Susan in respect of the illnesses suffered by her in the years 1955, 1956 and 1957. Opinion In section 262 of chapter 1 of the Internal Revenue Code of 1954, it is provided that "[except] as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses." That the expenditures here in issue were personal, living, or family expenses is, in our opinion, not open to question. Furthermore, it appears well settled that the cost of hiring a nuresmaid to care for children so that their parents may be gainfully employed is a personal expense, which under the statute is not deductible. George B. Wendell, 12 T.C. 161; Mildred A. O'Connor, 6 T.C. 323; Henry C. Smith, 40 B.T.A. 1038, affd. per curiam 113 F. 2d 114; and McVicker v. United States, 194 F. Supp. 607. *58 It thus follows that to the extent the payments to Bessie Roe were for nursemaid and caretaker's services for the children of the petitioners so that the petitioners could pursue gainful employment, they were personal expenses, and under section 262 are not deductible. In section 213(a)(2)(B) of chapter 1 of the Internal Revenue Code of 1954, however, a deduction is allowed for expenses paid during the taxable year, and not compensated for by insurance or otherwise, for medical care of a dependent to the extent of the amount by which such expenses exceed 3 percent of adjusted gross income. Under section 213(e)(1)(A), medical care is defined as amounts paid "for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body." By section 1.213-1(e)(1)(ii) of the Income Tax Regulations, it is provided that such expenses, to be deductible, must be "confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness," and an expenditure "which is merely beneficial to the general health of an individual" does not constitute an *59 expenditure for medical care within the meaning of the statute, and is not deductible. To show that the compensation paid Bessie Roe was medical care expense, the petitioners offered the testimony of two witnesses, that of petitioner Maurice Levy, Jr., and that of Edward G. Mack, their pediatrician. Although Maurice had no record of and could not recall the date of Bessie's employment, the petitioners seek to date the initial hiring of Bessie from or after the birth of Susan, and advance as the occasion for her employment the proposition that Susan was sickly and not a healthy child and that Bessie was hired to care for Susan upon the recommendation of Mack. On the other hand, it was Mack's testimony that he did not know Bessie Roe prior to her employment by petitioners, that she was merely a name on a list of practical nurses maintained in his office by his office nurse and that he made no recommendation of Bessie to petitioners. And though he could not recall the exact date Bessie began working for petitioners, it was his recollection that it was prior to the birth of Susan and possibly as early as the birth of Karen. We are satisfied that the hiring of Bessie had nothing to *60 do with Susan's physical condition or the state of her health, but rather, that her employment was for the rendering of nursemaid and caretaker services for Karen and then for Karen and Susan, and that the possibility that she might render medical services to either or both of the children was not the motivating factor. A much more likely factor, we think, was the fact that Shirley was a partner in a girls' wearing appearel business and in the conduct of that business would be away from home except on weekends, and to enable her to continue her work, which the facts show she did, it was necessary that petitioners employ a nursemaid and caretaker for their two infant daughters. The duties performed by Bessie Roe through and including the years herein were in conformity with such employment. The services rendered by her were for both children, not Susan alone. She prepared their breakfast and lunch, supervised their recreation and rest periods, and washed some of their clothing. She was usually off duty on weekends, and on those occasions the children were cared for by their mother or the housemaid. The record does show that both prior to and during the years herein, Susan's health *61 was below normal and she suffered more from ailments than an average child, and during these various periods when Susan was ailing some part of Bessie Roe's services was directed to the care of Susan, pursuant to the doctor's direction. That these periods were intermittent and not regular or continuing occurrences is indicated by Susan's attendance at kindergarten, where there was no nursing care. The record also shows that in the course of Bessie's employment by petitioners, Mack came to the conclusion that she was "good with infants and babies," and when in the course of a conversation with Mack, purportedly in the latter part of 1954, which conversation included a discussion of Susan's physical condition, petitioners brought up the subject of dispensing with Bessie's services, Mack expressed the view that it would be wise to retain Bessie if possible, and Bessie's employment was continued. It is hardly likely, however, that in dispensing with Bessie's services, the petitioners did not have in mind some other arrangement for the care of the children, since the facts show that, except on weekends, they both continued to be away from home in pursuit of their employment. Furthermore, *62 there is no showing, and in fact no contention, that the terms of Bessie's employment or the services she was to render, and did in fact render during the taxable years, were any different than they had been theretofore, namely, the rendering of services as nursemaid and caretaker not only for Susan but for Karen as well, including the preparation of their meals, whether they were suffering from ailments or in good health, the supervising of their recreation and rest periods, the washing of some of their clothes and the rendering of other comparable services, as well as the administering of the indicated treatment if either child should happen to be ill. As to Susan's ailments, the record is more definite as to the three years herein than with respect to the years immediately following her birth and up to the taxable years. Some part of Bessie's time was occupied in the rendering of services which if separated from other services would qualify as medical care, and it is reasonable to conclude, we think, that the possibility of need for such care for Susan may have prompted Mack to suggest that petitioners continue with the services of Bessie, if possible. There is no showing, however, *63 that these services, when related to the other services rendered by Bessie, occupied more than a small portion of her total time or of her total services. The proof supplied by the petitioners is not adequate for determining the comparative extent of the services rendered by Bessie which were related to Susan's illnesses. Applying the principle declared in Cohan v. Commissioner, 39 F. 2d 540, and bearing heavily against petitioners. who had the burden of showing the amount paid Bessie which was for services encompassed by section 213 but who have failed to carry such burden, we have concluded and found as a fact that $150 was the amount paid to Bessie in each of the years 1955, 1956 and 1957 for services which were in the nature of medical care within the meaning of the statute. All of the rest and remainder of the payments must accordingly be regarded as paid for services of a personal nature, and not of a character of those deductible from gross income. Decision will be entered under Rule 50. Footnotes
1. Whether Susan was or was not naturally below average in stature does not appear.↩